# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:17-CR-7-TLS |
| | ) | |
| DEMETRI D. BEACHEM | ) | |

## OPINION AND ORDER

On October 4, 2014, an officer from the Fort Wayne Police Department initiated a felony stop of Defendant Demetri D. Beachem's vehicle, believing that its occupants had been involved in a shooting earlier that night. On February 22, 2017, a grand jury indicted Beachem and others as a racketeering enterprise for activity related to attempted murder, conspiracy to murder, and assault with a dangerous weapon.

On December 1, 2017, the Defendant filed a Motion to Suppress [ECF No. 83] evidence obtained as a result of and in conjunction with the stop on October 4, 2014, alleging that the police discovered the evidence through an unreasonable search and seizure. Upon referral from this Court, Magistrate Judge Susan L. Collins held an evidentiary hearing on March 6, 2018, received post-hearing briefing, and issued a Report and Recommendation ("R&R") [ECF No. 144], recommending that the Court deny the Defendant's Motion to Suppress.

This matter is now before the Court on the Defendant's Objections to the R&R [ECF No. 149]. On October 1, 2018, the Government filed a Notice [ECF No. 150] advising the Court that the Government intends to rely both on its Response Brief Regarding Motion to Suppress [ECF No. 150], filed on July 23, 2019, and the R&R in response to the Defendant's Objections.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1)(A)–(B), a magistrate judge does not have authority to issue a final order on a motion to suppress evidence in a criminal case. Instead, the magistrate judge submits proposed findings of fact and recommendations to the district court. If a party files a timely objection to the magistrate judge's report and recommendation, § 636(b)(1) provides that

> the district judge is to make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The court may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge also may receive further evidence or recommit the matter to the magistrate judge with instructions.

De novo review does not require a de novo evidentiary hearing, even when witness credibility is at issue. *See United States v. Raddatz*, 447 U.S. 667, 673–76 (1980). Neither party has requested such a hearing, and the Court finds that the record before the Magistrate Judge is sufficient to allow this Court to make a de novo determination.

**BACKGROUND**

The Government offered the testimony of six law enforcement officials at the evidentiary hearing. (R&R 2.) The Magistrate Judge found their testimony to be credible. (*Id.*) The Defendant's objections do not dispute the Magistrate Judge's assessment regarding the credibility of the witnesses' testimonies or the Magistrate Judge's characterization of their testimonies. In fact, during the March 6, 2018, evidentiary hearing, the Defendant did not offer the testimony of any witnesses or meaningfully challenge the testimony of the Government's witnesses. Instead, the Defendant now challenges the Magistrate Judge's findings that the evidence offered at the hearing supported the conclusion that the Defendant's Fourth Amendment rights were not violated during the automobile stop and search in question.

Accordingly, as they are not disputed by either party, this Court adopts the Magistrate Judge's findings of fact regarding the events leading up to and including the October 4, 2014 traffic stop and vehicle search.

The Defendant's objections to the Magistrate's R&R concern the following findings:

1. The R&R's reference to the Defendant as a member of the "2500" gang before a jury adjudged the Defendant's guilt under 18 U.S.C. § 1959, the Racketeer Influenced Corrupt Organization Act ("RICO");

2. The R&R's conclusion that Sergeant Todd Hammel had probable cause to conduct an automobile stop after observing certain traffic infractions;

3. The R&R's conclusion that Sergeant Hammel had reasonable suspicion of criminal activity to conduct an automobile stop;

4. The R&R's finding that Sergeant Hammel knew the license plate number of the Defendant's vehicle shortly before the stop through the collective knowledge doctrine; and

5. The R&R's conclusion that the warrantless search of the Defendant's automobile was justified under the automobile exception to the warrant requirement

## ANALYSIS

### A. R&R's Reference to the Defendant's Affiliation to a Gang and Participation in Gang Activity

At the outset, the Defendant objects to the R&R on the basis that his Sixth Amendment right to a jury trial was violated when Magistrate Judge Collins made findings with respect to certain elements required for conviction under RICO. (R&R Obj. 3–5.) By finding that the Defendant was associated with the "2500" gang, the Defendant argues that the Magistrate Judge

incorrectly concluded "that the group of individuals with whom [the Defendant] is alleged to have associated and acted, . . . is a RICO 'enterprise' with a distinct 'structure' because these are elements the Government is required to prove before a jury for a RICO conviction. (R&R Objs. 4.)

First, the Magistrate Judge did not use evidence of the Defendant's association with the 2500 gang as proof that the Defendant was associated with a gang to find him guilty under RICO. The R&R contains no finding that the 2500 gang constitutes a RICO "enterprise" with a distinct "structure." The Magistrate Judge was tasked with determining whether law enforcement effectuated a traffic stop and vehicle search within the confines of the Fourth Amendment. In order to make this determination, the Magistrate Judge needed to evaluate whether law enforcement had probable cause or reasonable suspicion of criminal activity to stop and search the Defendant's vehicle. Such a determination requires a judge to assess the information available to law enforcement about the vehicle and driver before and during a vehicle stop.

Necessarily, therefore, Magistrate Judge Collins analyzed, among other things, information law enforcement received about the Defendant and his connection to a gang referred to as "2500" or "Stack Money." For example, the Magistrate Judge noted that a confidential human source had informed law enforcement that the Defendant drove a maroon Pontiac Bonneville, was a member of the 2500 gang, and had participated in a shooting with the 2500 gang. (R&R 2–3.) Another human source had informed law enforcement that he saw the Defendant drive by his house in a maroon Bonneville before a shooting and knew the Defendant to be a member of the 2500 gang. (R&R 3–4.) Such factual findings—specifically, human sources identifying the Defendant as a member of the 2500 gang—were incorporated in the

4

Magistrate Judge's analysis of whether law enforcement had probable cause or reasonable suspicion that criminal activity was afoot to justify a stop and search of the Defendant's vehicle on October 4, 2014. In other words, the Magistrate Judge did not examine the facts related to the Defendant's connection to the 2500 gang to decide whether the elements of a RICO violation were established for a guilty verdict in a jury trial, but instead, these facts were used to decide issues related to probable cause and reasonable suspicion—a permissible use of such information. *See United States v. Aleshire*, 2014 WL 11394905, at *5 (W.D. Wisc. Oct. 20, 2014) ("The test for probable cause . . . is whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. The application of the test is not fettered by the presumption of innocence embodied in the test for conviction." (quoting *United States v. Wagers*, 452 F.3d 534 (6th Cir. 2006)).

Therefore, the Court rejects the Defendant's argument that the R&R improperly established the elements required for a RICO conviction in violation of the Defendant's Sixth Amendment rights and presumption of innocence.

**B.**    **Probable Cause to Conduct Traffic Stop**

The Supreme Court has held that the decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Smith*, 668 F.3d 427, 430 (7th Cir. 2012) ("A traffic stop does not violate the Fourth Amendment when the police officer has probable cause to believe that a driver has committed [a traffic violation]."). Probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir.

2000). In other words, the circumstances must be "sufficient to warrant a man or woman of prudence to believe[] that a moving violation has occurred." *United States v. Williams*, 106 F.3d 1362, 1365 (7th Cir. 1997).

The Defendant contends that Sergeant Hammel did not have probable cause to stop the Defendant's vehicle because Sergeant Hammel's subjective motivation in effectuating the traffic stop was to investigate a vehicle suspected to be involved in prior criminal activity. (R&R Objs. 9.) Thus, the Defendant advances the theory that, in order for an officer to have probable cause to stop a vehicle, the officer's subjective motivation in making the stop must solely be to investigate the alleged traffic violation.

The Defendant's argument, however, cuts against established case law. In *Whren v. United States*, 517 U.S. 806 (1996), the Supreme Court confronted a similar argument to the one advanced by the Defendant. In *Whren*, law enforcement officers observed a vehicle violate certain traffic laws before effectuating a stop of the vehicle. Upon stopping the vehicle, the officers saw two bags of crack cocaine in the hands of the defendant, a passenger in the car. *Id.* at 813. The defendant argued that the officers' motive in conducting the traffic stop was not to investigate the traffic violations, but instead, to conduct other investigatory activities, thereby undermining the constitutional validity of the traffic stop. *Id.* The Supreme Court rejected the defendant's argument outright, "foreclos[ing] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved. . . . Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.*

Similarly, here, the Magistrate Judge determined that Sergeant Hammel credibly testified that he saw the Defendant's vehicle commit traffic infractions. Sergeant Hammel observed the following: "While behind the [Defendant's] vehicle, I observed it driving constantly across the center line for most of three blocks." (Mar. 6, 2018 Evidentiary Hr'g, Ex. 13 at 3.) Indiana Code Ann. § 9-21-8-2 states that "a vehicle shall be driven upon the right half of the roadway." Driving left across the center line, as the Defendant did "constantly" for three blocks, is in violation of Indiana Code Ann. § 9-21-8-2. Sergeant Hammel's subjective motivations for stopping the Defendant's vehicle "play no role" in the Fourth Amendment analysis. *Whren*, 517 U.S. at 813. Therefore, the standard applied by the Magistrate Judge in determining whether Sergeant Hammel had probable cause to stop the Defendant's vehicle was correct—whether "the circumstances confronting [Sergeant Hammel] support the reasonable belief that a driver has committed even a minor traffic offense." (R&R at 9, citing *Cashman*, 216 F.3d at 586.)

Moreover, Magistrate Judge Collins correctly applied the probable cause standard for a vehicle stop incident to a traffic violation. The Defendant driving back-and-forth across the center line, in violation of the Indiana Code, gave Sergeant Hammel reasonable belief that the Defendant had committed a traffic offense. Therefore, the Court accepts the Magistrate Judge's finding that Sergeant Hammel had probable cause to stop the Defendant's vehicle.

## C. Reasonable Suspicion of Criminal Activity to Conduct Traffic Stop

The Defendant also contests Magistrate Judge Collin's finding that Sergeant Hammel had reasonable suspicion of criminal activity to justify stopping the Defendant's vehicle. (R&R Objs. 5–7.)

"To make an investigatory stop, an officer needs only reasonable suspicion supported by articulable facts that criminal activity is afoot." *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Reasonable suspicion is "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Swift*, 220 F.3d 502, 745 (7th Cir. 2000) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

Magistrate Judge Collins found that Sergeant Hammel had reasonable suspicion to stop the Defendant's car based on the following circumstances:

1. The Defendant was known to drive a maroon Pontiac Bonneville (Mar. 6, 2018 Evidentiary Hr'g, Tr. 59, 79);

2. The Defendant was a known member of the 2500 gang (Tr. 21-22, 47);

3. The Defendant, his maroon Bonneville, and the 2500 gang were implicated in the shooting in Suttenfield and Caroline Street on October 4, 2014 (Tr. 84-86, 92-93);

4. The Defendant was known to carry a pistol with a green laser site attached to it (Tr. 47, 55-57; Mar. 6, 2018 Evidentiary Hr'g, Ex. 12);

5. The Defendant was suspected of participating in three shootings in the three days leading up to October 4, 2014, and was seen in his Bonneville during two of those shootings (Tr. 53-55, 186-88);

6. Detective Wilkins apprehended suspects in the shooting a short distance from where Sergeant Hammel observed the maroon Bonneville (Ex. 13 at 3).

(R&R 11.)

The Defendant first argues that factors two and three should be eliminated because "it is error for the R&R to presume Mr. Beachem to be a 'gang member' or to presume the collection of individuals arbitrarily labeled by the Government as the '2500' to be a 'gang.'" (R&R Objs. 5–6.) As discussed above, a court may consider the information available to law enforcement to determine whether law enforcement had probable cause or reasonable suspicion within the bounds of the Fourth Amendment without violating a defendant's right to a jury trial. Here, evidence of the Defendant's gang-related activity was not used to prove his membership in a gang, but rather, as information that was available to law enforcement prior to stopping the Defendant's vehicle. Thus, in order to analyze whether Sergeant Hammel had reasonable suspicion that criminal activity was afoot sufficient to warrant a stop, Magistrate Judge Collins appropriately considered that Sergeant Hammel had information regarding the Defendant's and the Defendant's vehicle's connection to recent gang-related activity and shootings. (R&R 11–12.) Contrary to the Defendant's objection, Magistrate Judge Collins did not err in considering law enforcement's information that the Defendant was a member of the 2500 gang and that the Defendant, the Defendant's vehicle, and the 2500 gang were connected to the shooting on October 4, 2014.

The Defendant next argues that the Magistrate Judge erroneously considered that a blue Mercury Milan was involved in the same October 4, 2014, criminal activity as the Defendant's vehicle and was stopped for traffic violations a short distance from where Sergeant Hammel observed the Defendant's vehicle. The Defendant argues that such an analysis imputes "guilt by association" to any suspected gang member near a crime scene. (R&R Objs. 6–7.).

The Defendant mischaracterizes how the Magistrate Judge weighed the information regarding the stop of the blue Mercury Milan as a part of the Magistrate's determination of whether Sergeant Hammel had reasonable suspicion to stop the Defendant's vehicle. On the night of October 4, 2014, Sergeant Hammel "received information that three vehicles (a maroon Pontiac Bonneville, a blue Chevrolet Impala, and a blue Mercury Milan with temporary tags) were just involved in a shots fired call." (Mar. 6, 2018 Evidentiary Hr'g, Ex. 13 at 2–3.) Subsequently, upon learning about the shooting, Sergeant Hammel received information that several vehicles had left a liquor store, "including [a] blue Mercury Milan with temporary tags" and that "the other two vehicles ([a] blue Chevrolet Impala and [a] maroon Pontiac Bonneville) had ended up" at an address on Meyer Avenue. (*Id.* at 3.) Sergeant Hammel also learned that Detective David Wilkens conducted a traffic stop on the blue Mercury Milan with temporary plates that was observed leaving the liquor store. (*Id.*) Sergeant Hammel proceeded to Meyer Avenue, located and followed the Defendant's maroon Bonneville, observed it a commit traffic violation, and then effectuated a stop ten to twelve blocks from where Detective Wilkens stopped the blue Mercury Milan. (*Id.*; Mar. 6, 2018 Evidentiary Hr'g Tr. 174).

The stop of the blue Mercury Milan is therefore relevant to the reasonable suspicion inquiry. Information that another vehicle that was linked to the same October 4 shooting as the Defendant's vehicle was stopped close to where Sergeant Hammel observed the Defendant's maroon Bonneville provides further support to the proposition that Sergeant Hammel had reasonable suspicion to stop Defendant's vehicle for suspected criminal activity.[1]

---

[1] In a separate section of his brief, the Defendant objects to the Magistrate Judge's statement that Sergeant Hammel could be found to have knowledge of the Defendant's vehicle's license plate number through the collective knowledge doctrine. (R&R Objs. 10–11.) Importantly, however, the Magistrate Judge's conclusion that Sergeant Hammel had reasonable suspicion to stop Defendant's vehicle did not rely on

The Court therefore rejects the Defendant's arguments objecting to the Magistrate Judge's reasonable suspicion findings and accepts the Magistrate Judge's conclusion that Sergeant Hammel had reasonable suspicion to stop the Defendant's vehicle.

**D.     Automobile Exception to Warrantless Search**

The Defendant also objects to the R&R on the basis that the Magistrate Judge erroneously found that law enforcement had probable cause to search the Defendant's vehicle. The Defendant contends the Magistrate Judge erred by factoring in the probable cause analysis that law enforcement had information that the Defendant was known to carry a pistol with a green laser. The Defendant argues that the Magistrate Judge justified the existence of probable cause by citing to the fact that law enforcement indeed found the Defendant's pistol.[2] (R&R Objs. 6.) Besides not finding any language in the R&R suggesting that the Magistrate Judge found law enforcement had probable cause because the automobile search ultimately uncovered the Defendant's pistol *after* the search, the Court also finds that law enforcement had probable cause to search the Defendant's vehicle *before* undertaking that search.

Under the automobile exception to the Fourth Amendment warrant requirement, a vehicle may be searched without a warrant "if there is probable cause to believe a vehicle contains

---

whether Sergeant Hammel knew the vehicle's license plate number (R&R 12). Consequently, because the Magistrate Judge did not factor whether Sergeant Hammel had knowledge of the license plate number in the R&R's ultimate finding, this Court finds no reason to conduct a de novo review on the issue of collective knowledge.

[2] The Defendant's argument regarding the unconstitutionality of the vehicle's *search* based on law enforcement's knowledge of the pistol is included in the section where the Defendant argues that Sergeant Hammel did not have reasonable suspicion to *stop* Defendant's vehicle. (R&R Objs. 6.) The Court finds it appropriate to address the Defendant's argument regarding the pistol with the constitutionality of the vehicle's search.

evidence of criminal activity, [and] police may search in any area in which the evidence might be found." *United States v. Nicksion*, 628 F.3d 368, 377 (7th Cir. 2010) (citations omitted). On October 1, 2014, a reliable confidential source reported to law enforcement that the Defendant participated in a shooting with the 2500 gang. (Mar. 6, 2018 Evidentiary Hr'g, Ex. 12). On October 4, 2014, at 8:05 p.m., approximately thirty minutes before Sergeant Hammel's stop, the same confidential source told law enforcement that the Defendant used a pistol equipped with a green laser in a shooting minutes earlier that same night. (Mar. 6, 2018 Evidentiary Hr'g, Tr. 81–82, 85–86; Ex. 13 at 1.) A Youtube.com video uploaded on August 23, 2014, also provided law enforcement with credible information that the Defendant was known to carry a pistol with a green laser. (Mar. 6, 2018 Evidentiary Hr'g, Tr. 188, Ex. 12.) The totality of these facts evidencing the Defendant's possession of a unique pistol result in the conclusion that law enforcement had probable cause to search the Defendant's vehicle for evidence of the Defendant's pistol. *See United States v. Calvo-Saucedo*, 409 F. App'x 21, 25 (7th Cir. 2011) ("Authorities have probable cause if, based on the totality of circumstances, there exists a fair probability of finding the items.") (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The information regarding the pistol was not the sole basis that gave rise to probable cause to believe Defendant's vehicle contained evidence of criminal activity. Additional information that gave rise to probable cause to search the vehicle included (1) reports of the Defendant's involvement in shootings every day from October 1 to October 4, 2014, (2) reports of the Defendant's vehicle's involvement in the shootings, and (3) law enforcement's observation that a passenger in the Defendant's vehicle wore clothing with the words "Stack Money" and "2500" on it, indicating an affiliation with the gang with suspected involvement in

the shootings. (R&R Objs. 3–6.) Moreover, during the stop, the Defendant confirmed to law enforcement that he had a pistol in his vehicle. (*Id.* At 6–7.) Noting that a lawfully registered handgun can still be used in a crime, this fact provides additional support that officers had probable cause to search the Defendant's vehicle for evidence of criminal activity, even if the pistol was lawfully registered. *Cf. United States v. Arvizu*, 534 U.S. 266, 277 (2002) ("A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct.").

Based on the totality of information available to law enforcement before their search of the Defendant's vehicle, the Court concludes the Magistrate Judge was correct to find that law enforcement had probable cause to search the Defendant's vehicle for evidence of criminal activity.

## CONCLUSION

For the reasons stated above, the Court ADOPTS the Report and Recommendation [ECF No. 144], and DENIES the Motion to Suppress [ECF No. 83]. A separate scheduling order will be issued.

SO ORDERED on October 18, 2018.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT