UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:17-cr-7 DRL-SLC |
| DEMETRI D. BEACHEM *et al.*, | |
| Defendants. | |

OPINION & ORDER

The court recently held that the attempted murder guideline under U.S.S.G. § 2A2.1 will apply to each defendant at sentencing for counts 9, 11, and 13. Each defendant thereafter moved to withdraw his guilty plea. Together they argue that the government breached its promises or alternatively that mistake or lack of consideration invalidate their plea agreements. The court denies their motions.

STANDARD

After pleading guilty and after the court accepts the plea, a defendant may withdraw his plea if he shows a "fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). The law recognizes three reasons that would be fair and just: when the defendant shows actual or legal innocence, or when a guilty plea was not knowing and voluntary. *United States v. Graf*, 827 F.3d 581, 583 (7th Cir. 2016); *see, e.g.*, *United States v. Fard*, 775 F.3d 939, 945-46 (7th Cir. 2015) (colloquy showed plea wasn't knowing and voluntary); *United States v. Gomez-Orozco*, 188 F.3d 422, 425-26 (7th Cir. 1999) (after pleading guilty, defendant learned he may be an United States citizen, which would be a complete defense to charge of illegal reentry). "Because the defendant's statements at the plea colloquy are presumed to be true, the defendant bears a heavy burden of persuasion in showing that such a fair and just reason exists." *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008). Statements at a plea hearing are made under

oath, so the court is "generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions." *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) (citation omitted).

## DISCUSSION

Each defendant pleaded guilty with a clear plea agreement and only after a thorough plea colloquy. No defendant has presented any evidence of actual or legal innocence, only statements in contradiction to sworn guilty pleas, so the court considers whether the defendants pleaded guilty knowingly and voluntarily, or alternatively whether any plea agreement should be rescinded because of the government's alleged breach, the presence of mutual mistake, or the absence of consideration.

On this record, each defendant's plea agreement was clear as day.[1] Each said the defendant understood English (¶ 1); had received a copy of the indictment, discussed it with his lawyer, and understood the accusations against him (¶ 2); understood the rights he waived by pleading guilty (¶¶ 4-5); knew the court would "determine the applicable sentencing guideline range" and "determine all matters, whether factual or legal, relevant to the application of the U.S. Sentencing Guidelines" (¶ 7); wanted to plead guilty to counts 9 through 14 because he was "guilty of these offenses" (¶ 8(a)); acknowledged the maximum penalties for each count (¶ 8(b)); understood that "no one [could] predict the precise sentence that will be imposed" and that the court had "authority to impose any sentence within the statutory maximum" (¶ 8(d)); and entered into his agreement freely and voluntarily with the help of an attorney (¶¶ 11-12).

Each defendant's guilty plea was made only after a thorough plea colloquy. Under oath, each defendant said he understood English (Beachem Tr. 4; Beamon Tr. 4; Bolden Tr. 5; Burrus Tr. 6); reviewed the indictment with his attorney (Beachem Tr. 5; Beamon Tr. 12; Bolden Tr. 7; Burrus Tr.

---

[1] The relevant portions of each defendant's plea agreement are identical (ECF 270 (Mr. Bolden) ECF 272 (Mr. Beamon); ECF 291 (Mr. Beachem); ECF 295 (Mr. Burrus)), so the court refers only to the paragraphs.

8); was satisfied with his counsel's performance (Beachem Tr. 6; Beamon Tr. 7; Bolden Tr. 7; Burrus Tr. 9); understood his plea agreement (Beachem Tr. 7; Beamon Tr. 6-7; Bolden Tr. 9; Burrus Tr. 10); was guilty of the charges after hearing the elements for each (Beachem Tr. 13-18; Beamon Tr. 18; Bolden Tr. 26; Burrus Tr. 16-21); agreed with the factual basis (Beachem Tr. 43; Beamon Tr. 30-54; Bolden Tr. 46; Burrus Tr. 39); understood the maximum penalties for his crimes (Beachem Tr. 44; Beamon Tr. 23; Bolden Tr. 16-17; Burrus Tr. 39-42); knew that the court would determine the sentencing range (Beachem Tr. 45-47; Beamon Tr. 29-30; Bolden Tr. 17-19; Burrus Tr. 42-43); knew that the court might arrive at a sentence he didn't expect and that he couldn't withdraw his guilty plea on that basis (Beachem Tr. 47; Beamon Tr. 29-30; Bolden Tr. 17-19; Burrus Tr. 43); was informed of the recommendations the government agreed to make (Beachem Tr. 48; Beamon Tr. 26-28; Bolden Tr. 10; Burrus Tr. 44-45); confirmed there were no other promises or predictions regarding his guilty plea and that he wasn't threatened or forced to plead guilty (Beachem Tr. 50; Beamon Tr. 23; Bolden Tr. 15, 19-21; Burrus Tr. 47); and ultimately pleaded guilty (Beachem Tr. 53-54; Beamon Tr. 8-12; Bolden Tr. 15, 19-21; Burrus Tr. 50-51).

When a "defendant wishes to withdraw his plea after he states at a Rule 11 hearing that it was given freely and knowingly, he faces an uphill battle in persuading the judge that his purported reason is fair and just." *United States v. Cieslowski*, 410 F.3d 353, 358 (7th Cir. 2005) (citation omitted). No defendant meets his heavy burden in showing a fair and just reason for withdrawing it now. The court considers the totality of the circumstances, including "(1) the complexity of the charge; (2) the defendant's intelligence, age, and education; (3) whether the defendant was represented by counsel; (4) the district judge's inquiry during the plea hearing and the defendant's own statements; and (5) the evidence proffered by the government." *United States v. Pineda-Buenaventura*, 622 F.3d 761, 770 (7th Cir. 2010) (citation omitted); *see United States v. Neal*, 907 F.3d 511, 514 (7th Cir. 2018).

3

To be fair, the violent racketeering charges presented more complexity than many federal cases; and, though the application of the guidelines concerned sentencing—not the charges *per se*—their marriage added to the case's complexity. That complexity was thereafter reduced to bite-size morsels that each defendant digested with ease during comprehensive plea colloquies. The defendants were 25-28 years old at the time of their pleas—adults of sound mind—three having a high school diploma or GED (one having a year of college), and one ending his high school education in the eleventh grade. Not one acted confused. Instead, they listened and straightforwardly answered questions from the court. Each defendant understood that the court would decide all questions under the sentencing guidelines, that the court would determine the applicable sentencing guideline range, that no one could predict the precise sentence to be imposed, and that the court could impose any sentence within the statutory maximum. Each defendant understood that the court might arrive at a sentence he didn't expect and that he couldn't withdraw his guilty plea merely because that occurred. Each defendant was represented by skilled and knowledgeable counsel—indeed, counsel who regularly practice in federal court in this district, who individually have decades of experience, and who collectively represent some 140 years within the bar. The proffer from the government for each defendant was robust, reciting details that trailed pages long—far more than most federal cases—and each defendant admitted the proffer's truth. Each defendant's plea was knowing and voluntary.

Alternatively, the defendants argue that the government breached its plea agreements when it argued that the court should apply the attempted murder guideline instead of attempted assault as charged in the indictment—the position the court ultimately adopted. A plea agreement is a contract, so the court applies ordinary contract principles to assess whether there was a breach. *United States v. Orlando*, 823 F.3d 1126, 1134 (7th Cir. 2016); *United States v. Malone*, 815 F.3d 367, 370 (7th Cir. 2016). If the agreement is clear, the court applies its plain language. *Orlando*, 823 F.3d at 1134. The breach must be material. *Id.* Each plea agreement was clear: the government had no obligation to refrain from

arguing the attempted murder guideline under U.S.S.G. § 2A2.1. For its part, the government agreed only to recommend offense level reductions for acceptance of responsibility (assuming each defendant continued to manifest such acceptance) and to recommend that counts 9, 11, and 13 would run concurrently (¶¶ 8(c)(1)-(2)); and then as a binding term to dismiss the remaining counts of the indictment (¶ 8(f)). The government so far has done everything it promised.

The defendants next argue that the government implicitly promised not to argue the attempted murder guideline by agreeing to dismiss the charges related to attempted murder; but this argument has no footing in the plea agreement. Each plea agreement disclaimed any representation by the government about what sentence the court would impose. Each plea agreement contained a merger clause saying, "no promises have been made to me other than those contained in [the] agreement" (¶ 12). These clauses bar any extrinsic evidence that conflicts with the plea agreement's plain language. *See Malone*, 815 F.3d at 371 (government didn't breach plea agreement when it argued that there were 28 victims at sentencing, though the factual basis only identified 4 victims, because there was no language stipulating to the number of victims in the plea agreement). In addition, each defendant denied any other promises—from the government or his own counsel—that motivated his guilty plea:

### Mr. Beamon
(ECF 432 at 23)

Court: Has anyone made any promises or assurances or predictions to you, or anyone else, to cause you to plead guilty?

Beamon: No, your honor.

Court: Has your lawyer made any promise or prediction to you about the sentences you might receive?

Beamon: No, your honor.

### Mr. Bolden
(ECF 431 at 9, 14)

Court: Mr. Bolden, has anyone made any promise or assurance that's not contained in this plea agreement to get you to accept this plea agreement?

Bolden: No, your honor.

Court: Are there any side agreements with the government that aren't contained in this plea agreement?

Bolden: No, your honor. . . .

Court: Has anyone made any promises or assurances to get you to plead guilty?

Bolden: No, your honor.

### Mr. Burrus
(ECF 430 at 15, 47)

Court: Is there anything else that the government has promised you that was not mentioned by Mr. Geller?

Burrus: No. . . .

Court: Other than what we've just discussed here today, sir, has anyone made any promises or predictions to you as to what sentence you might receive in this case?

Burrus: No.

### Mr. Beachem
(ECF 389 at 12, 50)

Court: Is there anything else that the government promised you that Mr. Geller did not state here on the record?

Beachem: No, that's—he didn't promise anything. . . .

Court: Other than what we have discussed here today, sir, has anyone made any predictions or promises to get you to plead guilty?

Beachem: No.

The specter of some promise from the government, express or implied, or even some prediction by counsel proves soundly debunked by each defendant's admissions under oath. Because the plea agreements contained a merger clause, because the language regarding the government's obligations was clear, and because the defendants admitted there were no other promises, the inquiry ends there.

That the defendants now fear the possibility of a sentence beyond what they originally hoped doesn't entitle them to withdraw from their guilty pleas. The plea agreement informed each defendant that sentencing was the court's job. The plea colloquies likewise stressed the uncertainty of each defendant's sentence: each defendant was informed that he could be sentenced anywhere within the statutory maximum, and that just because the court reached a sentence he didn't originally contemplate, he couldn't withdraw his guilty plea. A defendant's incorrect belief as to his sentence, including one predicted by his counsel, is insufficient to withdraw his plea. *United States v. Redmond*, 667 F.3d 863, 872-73 (7th Cir. 2012); *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008); *United States v. Howard*, 341 F.3d 620, 622 (7th Cir. 2003); *see also Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006) (pleading guilty "entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken") (quoting *McMann v. Richardson*, 397 U.S. 759, 770 (1970)). No defendant says he was misinformed about the substantive offenses to which he pleaded guilty, only the sentence he fears today. "A mistake about the substantive offense goes to the heart of the guilty plea; a mistake about the possible sentence—especially when the defendant has been warned that the judge will determine the sentence based on information collected by the Probation Office and at any sentencing hearing—does not." *Bowlin*, 534 F.3d at 660. "[T]hat a defendant underestimated his sentence when entering his plea is not a fair and just reason to permit him to withdraw that guilty plea." *Redmond*, 667 F.3d at 872 (citation omitted); *see United States v. Scott*, 929 F.2d 313, 315 (7th Cir. 1991) ("To allow [defendant] to withdraw his plea because of secret expectations that he harbored in the face of his directly contradictory sworn testimony would undermine the strong societal interest in the finality of guilty pleas.").

Nor did the government commit a *Santobello*-type violation. *See Santobello v. New York*, 404 U.S. 257, 262 (1971); *see also Puckett v. United States*, 556 U.S. 129, 139-43 (2009); *United States v. Navarro*, 817 F.3d 494, 499-501 (7th Cir. 2015); *United States v. Anderson*, 604 F.3d 997, 1002-04 (7th Cir. 2010);

7

*United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir. 1992). Prosecutors must adhere to their promises, *United States v. Wyatt*, 982 F.3d 1028, 1030 (7th Cir. 2020), and recommending a sentence when the plea agreement says the government won't, *see Santobello*, 404 U.S. at 262, or arguing for an upward variance when the government has promised to recommend a within-guideline sentence can work a material breach of a plea agreement, *see Navarro*, 817 F.3d at 499; *see, e.g., United States v. Jones*, 2021 WL 1992045, 1 (N.D. Ind. 2021). That isn't what happened here.[2] Again, the government so far has done everything it promised.

The defendants last turn to contract principles. Each defendant argues that his guilty plea is void because of a mutual mistake. Mutual mistake may invalidate a plea agreement if it goes to an "essential element" of the guilty plea. *Patterson*, 576 F.3d at 438. "[T]here must be a meeting of the minds on all essential elements of a guilty plea in order for the plea to be valid, and . . . ambiguity in an essential term or a mutual mistake about the meaning of such a term can invalidate" a plea. *Id.* (citation omitted).

There was no mutual mistake here. A mutual mistake occurs when both parties "share a common assumption about a vital existing fact upon which they based their bargain and that assumption is false . . . [and] because of the mistake, a quite different exchange of values occurs from the exchange of values the parties contemplated[.]" *McLaughlin v. Jung*, 859 F.2d 1310, 1313 (7th Cir. 1988). Despite the clarity each defendant expressed under oath about his plea agreement, and despite the actual clarity of each plea agreement, each defendant now pivots to say he didn't "understand the contract to mean what it says," *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 421 (7th Cir. 1998), or that he assumed a different sentencing scheme would apply. Each defendant's careful review of his plea

---

[2] The court also finds no merit in Mr. Beachem's argument that fundamental fairness dictates a finding that his plea agreement was breached. Mr. Beachem again tries to distinguish *United States v. Masters*, 978 F.2d 281 (7th Cir. 1992), and *United States v. Garcia*, 754 F.3d 460 (7th Cir. 2014), cases on which the court relied to apply the attempted murder guideline. The court sees no merit in his attempted distinctions.

agreement and sworn testimony before entering a guilty plea belie this position. Even so, that a defendant says he misunderstood his plea agreement when it was clear won't now invalidate his guilty plea. That a defendant says he alone made an assumption that turned out to be erroneous also doesn't presuppose mutuality—that the government did so too—not on this record.

In addition, no mistake here bears on an essential element of the guilty plea. For an agreement relating to punishment to be considered essential, it must be a binding term. *See Patterson*, 576 F.3d at 438; *United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996). The only binding term here is that the government will dismiss the counts specified in the plea agreement. Dismissing a charge doesn't foreclose appropriate consideration of relevant conduct in deciding the real offense or in deciding one's sentence. *See Redmond*, 667 F.3d at 875; *see also United States v. Garcia*, 754 F.3d 460, 473 (7th Cir. 2014); *United States v. Masters*, 978 F.2d 281, 284-85 (7th Cir. 1992). The court may consider reliable information. "[I]n determining relevant conduct, a court may consider a broad range of information, including uncharged crimes, crimes where charges have been dismissed, and crimes for which the defendant has been acquitted." *Redmond*, 667 F.3d at 875. There is no limitation "placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. The court's inquiry is "broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may come." *United States v. Modjewski*, 783 F.3d 645, 650 (7th Cir. 2015) (*per curiam*) (quoting *United States v. Johnson*, 489 F.3d 794, 796-97 (7th Cir. 2007)).

There wasn't a term binding the government or the court to utilize a particular guideline or to impose a particular sentence or to handcuff the law's usual allowance to reasonably consider reliable information or conduct underlying even dismissed charges. The bar for asserting mutual mistake is very high. *See, e.g.*, *United States v. Morris*, 821 F.3d 877, 881 (7th Cir. 2016) (discrepancy between

9

recommended sentencing range in plea agreement and actual sentencing range didn't warrant withdrawal from plea agreement); *Barnes*, 83 F.3d at 936 (plea agreement not invalid even when the defendant, prosecutor, and court didn't realize at the time of the plea hearing that the defendant would be sentenced as a career offender). No defendant makes a sufficient showing today.

Mr. Beachem adds argument that his plea agreement lacked consideration, citing to an out-of-circuit opinion that held that a government's promise not to oppose acceptance of responsibility wasn't consideration for a plea agreement because the reduction would be available anyway. *See United States v. Lutchman*, 910 F.3d 33, 37-38 (2d Cir. 2018). *Lutchman* isn't persuasive. First, this circuit disagrees with *Lutchman*: here a promise to recommend acceptance of responsibility is consideration. *See United States v. Thomas*, 639 F.3d 786, 788 (7th Cir. 2011) ("the government did give consideration for Thomas's waiver in the form of . . . a promise to recommend a downward adjustment for acceptance of responsibility"); *see also United States v. Quintanilla*, 729 F. Appx. 476, 478 (7th Cir. 2018) ("the government's promise to recommend a downward adjustment for acceptance of responsibility, which the government did in this case, amounts to consideration for [defendant's] plea agreement"). Second, his plea agreement goes beyond the one in *Lutchman* because it mandates dismissal of the remaining counts and recommends concurrent sentencing for some charged counts. The dismissal of these charges, though it doesn't affect the recommended range under the guideline calculation, does lower his statutory minimum. *Compare* 18 U.S.C. § 1959(a)(5) (10 year minimum) *with* 18 U.S.C. § 1959(a)(3) (no statutory minimum) *and* 18 U.S.C. § 1959(a)(6) (no statutory minimum). That Mr. Beachem may have had a weaker bargaining position doesn't mean his plea agreement is void for lack of consideration. *See United States v. Kilcrease*, 665 F.3d 924, 928 (7th Cir. 2012).

The defendants effectively want to revisit the prior ruling by arguing that they are factually innocent of attempted murder. The record contradicts their position. The guideline range was based on the law—relevant conduct principles. *See United States v. Johnson*, 342 F.3d 731, 734 (7th Cir. 2003).

Even now, no credible evidence has been adduced to explain the defendants' contradiction to prior sworn testimony or to reflect innocence. *See Chavers*, 515 F.3d at 725. The record affords no fair and just reason for any defendant to withdraw his guilty plea, so the court denies the motions to withdraw and for a hearing. *See United States v. Brown*, 973 F.3d 667, 715 (7th Cir. 2020).

## CONCLUSION

No defendant establishes a fair and just reason for withdrawing his guilty plea. The court thus DENIES the motions to withdraw (ECF 407, 410, 414, 423) and to have a hearing (ECF 408, 412, 416). The court will reschedule sentencing hearings forthwith.

SO ORDERED.

May 27, 2021               *s/ Damon R. Leichty*
                           Judge, United States District Court